# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| CHRISTOPHER A. JONES, | 3:05-CV-0278-PMP (RAM) |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| MARK DRAIN, et al., | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Philip M. Pro, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Plaintiff's Motion for Summary Judgment filed on September 6, 2005. (Doc. #18.) Defendants opposed the motion (Doc. #20) and filed a Cross-Motion for Summary Judgment (Doc. #21). Plaintiff then filed a reply (Doc. #30) and an opposition to Defendants' Cross-Motion (Doc. #31), to which Defendants replied (Doc. #32). Also before the court is Plaintiff's Request for Entry of Default filed on September 19, 2005.[1] (Doc. #26.)

///
///

---

[1] Although Defendants' Opposition to Plaintiff's Motion for Summary Judgment (Doc. #20) and Cross-Motion for Summary Judgment (Doc. #21) were docketed separately, they were written in a combined format. The same is true for Plaintiff's Opposition to Defendants' Cross-Motion for Summary Judgment (Doc. #31) and Plaintiff's Reply brief (Doc. #30). To simply matters, the court will only cite to Docket #20 when referring to either of Defendants' said motions, and cite to Docket #30 for either of Plaintiff's said motions.

# BACKGROUND

Plaintiff filed a civil rights complaint in the Seventh Judicial District Court of the State of Nevada on March 23, 2005 against Defendants Mark Drain, E.K. McDaniel, and Jackie Crawford. (Doc. #2, Exh. C.) The Complaint asserts that Defendants are liable for denying Plaintiff his due process, violating Plaintiff's First Amendment rights, and for condoning constitutional violations. (*Id.*) Plaintiff requested declaratory relief in addition to compensatory and punitive damages. (*Id.*)

The Complaint was screened under 28 U.S.C. § 1915A on June 29, 2005. (Doc. #12.) The court dismissed the entire Complaint and gave Plaintiff leave to amend due to several serious factual defects under *Heck v. Humphrey*, 512 U.S 477, 486-87 (1994). (*Id.*) Plaintiff then filed a Motion for Reconsideration (Doc. #13), which was granted on August 22, 2005 in light of additional documentary proof (Doc. #17). Plaintiff was allowed to proceed on all claims and as to all Defendants, and Defendants were ordered to answer within twenty days of the court's order. (*Id.*)

On September 12, 2005, Defendants made a Motion for Enlargement of Time to delay the filing of an answer on the belief that some preclusion doctrines might apply to Plaintiff's case. (Doc. #19.) The motion was granted. (Doc. #22.) The court gave Defendants twenty days after its decision on the parties' cross-motions for summary judgment to file an answer. (*Id.*)

# STATEMENT OF FACTS

Plaintiff is an inmate at Ely State Prison (hereinafter "ESP"). (Doc. #2, Exh. C.) According to Plaintiff, correctional officer Michael Nustad performed a search of his cell for contraband on September 21, 2000, that led to the discovery of an old letter written by Plaintiff in September 1999 (Doc. #2, Exh. D-1) and a copy of Administrative Regulation 121 (hereinafter "AR"). The letter purportedly encouraged other inmates to cease their violent behavior and instead make use of the prison's grievance system in order to open the door for a class action suit. (Doc. #2, Exh. C.)

Plaintiff was subsequently charged with disciplinary violations for the possession of those materials. (Doc. #2, Exh. D-2.) For the letter, Plaintiff was accused of organizing an institutional disruption. (*Id.*) As to the AR, Plaintiff was accused of possessing confidential prison regulations. (*Id.*) A disciplinary hearing was held on November 3, 2000, by Defendant Mark Drain. (Doc. #2, Exh. D-3.)

Plaintiff was convicted of possession of the letter and was sanctioned to 180 days in disciplinary segregation, loss of telephone privileges for ninety days, forfeiture of the letter at issue, and a loss of thirty days of good time.[2]  (Doc. #2, Exh. D-4.)

On November 18, 2000, Plaintiff appealed his disciplinary charges to the warden, Defendant E.K. McDaniel.  (Doc. #2, Exh. D-5.)  Plaintiff complained that Officer Drain did not produce the September 1999 letter at his hearing, and that in any event, the letter was protected under the First Amendment.  (*Id.*)  The disciplinary charges were nevertheless upheld.  (Doc. #2, Exh. D-6.)  Warden McDaniel stated that the formal rules of evidence did not apply in disciplinary hearings.  (*Id.*)  Then, on January 7, 2001, Plaintiff wrote to the Director of the Nevada Department of Corrections, Defendant Jackie Crawford.  (Doc. #2, Exh. D-13.)  Crawford only responded, however, by encouraging Plaintiff to use the proper procedures for disagreements with disciplinary actions.  (Doc. #2, Exh. 15.)

A.  The Present Suit:  Plaintiff's Section 1983 Action

Plaintiff's first claim for a violation of his due process rights is grounded on the fact that Officer Drain refused to produce the offending letter at his hearing.  (Doc. #2, Exhs. C, D-3.)  Plaintiff claims that although Officer Drain said he reviewed the letter prior to the hearing, he was legally obligated to put it on the record.  (Doc. #2, Exh. C.)  Plaintiff's second cause of action is for an alleged violation of the First Amendment.  (*Id.*)  According to Plaintiff, Officer Drain used the disciplinary process to retaliate and suppress his right to free speech.  (*Id.*)  Last, Plaintiff's third claim asserts that Defendants McDaniel and Crawford are liable for failing to supervise and condoning Officer Drain's violative conduct.

B.  The Previous Suit:  Plaintiff's State Court Petition for Writ of Habeas Corpus

On November 7, 2003, Plaintiff filed a post-conviction petition for writ of habeas corpus in the Seventh Judicial District Court.  (Doc. #20, Exh. C.)  Plaintiff made First and Fourteenth Amendment challenges to his November 3, 2000 conviction for organizing an institutional disruption (*id.*), which

---

[2]Transcript notes from Plaintiff's disciplinary hearing show that charges associated with Plaintiff's possession of AR 121 were dropped.  (Doc. #2, Exh. D-3 at p. 2; Doc. #2, Exh. D-4.)

3

were recognized to the extent he lost thirty days of statutory good time (Doc. #20, Exh. D). On December 3, 2003, Defendants were ordered by the state court to respond to Plaintiff's petition within forty-five days of the court's order. (Doc. #18, Exh. 52.)

Instead of responding, Defendants filed a motion for enlargement of time. (Doc. #18, Exh. 53.) The state court granted Defendants' motion on January 27, 2004 and gave Defendants until March 5, 2004 to respond. (Doc.#18, Exh. 54.) However, when that day came Defendants made a second motion for enlargement of time requesting an extension until April 2, 2004. (Doc. #18, Exh. 55.) That motion was granted, but the state court warned Defendants that no further extensions would be made absent extreme circumstances. (Doc. #18, Exh. 56.)

Defendants made a motion to dismiss Plaintiff's petition on April 1, 2004. (Doc. #18, Exh. 57.) Defendants argued that Plaintiff's petition was untimely and failed to state a cognizable claim under state law. (*Id.*) On May 26, 2004, the state court granted Defendants' motion to dismiss as to Plaintiff's third claim, but denied it as to Plaintiff's first and second claims.[3] (Doc. #18, Exh. 58.) The court then ordered Defendants to file a response to Plaintiff's petition by June 11, 2004. (*Id.*)

On June 11, 2004, Defendants filed their third motion for enlargement of time. (Doc. #18, Exh. 59.) The state court found the motion was inappropriate and subsequently denied it. (Doc. #18, Exh. 60.) Defendants then filed an answer to Plaintiff's petition on June 22, 2004. (Doc. #18, Exh. 61.) Plaintiff, however, responded by making a motion to strike the answer as untimely. (Doc. #18, Exh. 62.)

The state court granted Plaintiff's motion to strike Defendants' answer. (Doc. #18, Exh. 63.) Plaintiff's petition was therefore unopposed, and the court presumed that all of the allegations in the petition were true. (*See* Doc. #2, Exh. D-49.) On January 5, 2005, the state court granted Plaintiff's petition for writ of habeas corpus. (*Id.*) No appeal was taken from the default judgment. (Doc. #18,

---

[3]Plaintiff asserted the same claims in his petition for writ of habeas corpus as he does in the instant matter. (*See* Doc. #18, Exh. 58.)

4

Exh. 64 (stating that the reason for not appealing the default was because "in the larger scheme of things, the relief granted was *de minimis*").)

## LEGAL STANDARD

A party may move for summary judgment under Federal Rule of Civil Procedure (hereinafter "FRCP") 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those which would affect the outcome of the case under the substantive law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and all facts are viewed in the light most favorable to the non-moving party, *Hunt v. Dental Dept.*, 865 F.2d 198, 200 (9th Cir. 1989). The court, however, does not weigh the evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994). Whether there is no genuine issue on a material fact means that a rational fact-finder must not be able to find in favor of the nonmovant. *Id.*; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the moving party bears the burden of proof at trial, the moving party must "establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). This must be shown through affidavits or some other form of admissible evidence. *Id.* Conversely, where the moving party does not bear the burden of proof at trial, he only has to show the court that there is no genuine issue of material fact, *Celotex Corp.*, 477 U.S. at 323, on at least one of the essential elements of the other party's claim, *Fontenot*, 780 F.2d at 1195. This may be accomplished by either producing affirmative evidence to negate a material fact in the opposition's case, or by pointing out the absence of a genuine issue on a material fact in the opposition's case. *Celotex Corp.*, 477 U.S. at 325. In either instance, if the moving party meets his initial burden of production, the nonmovant who bears the ultimate burden at trial "must set forth specific facts showing that there is a genuine issue for trial[,]" Fed. R. Civ. P. 56(e), and may not rely on mere allegations. *Anderson*, 477 U.S. at 248.

**DISCUSSION**

A. Plaintiff's Request for Entry of Default

Plaintiff's motion for default argues for the court to enter a default judgment against Defendants based on their failure to file an answer by September 12, 2005. (Doc. #26.) This motion, however, ignores Defendants' Motion for Enlargement of Time (Doc. #19) and the court's order on September 14, 2005 (Doc. #22). Due to the possible application of the preclusion doctrines, the court gave Defendants until twenty days after its ruling on the parties' cross-motions for summary judgment to file an answer. (Doc. #22.) Accordingly, Plaintiff's Request for Entry of Default must be denied.

B. Cross-Motions for Summary Judgment[4]

Plaintiff's Motion for Summary Judgment argues that the Seventh Judicial District Court's ruling on Plaintiff's writ of habeas corpus should apply in the instant case under the doctrines of claim and issue preclusion. (Docs. #18, 30.) Defendants' Cross-Motion claims that claim preclusion should bar Plaintiff's case in federal court, but that issue preclusion is unavailable to Plaintiff given the circumstances of the prior proceeding in state court. (Docs. #20, 32.) The parties agree on all of the material facts.

Before the court discusses the merits of Plaintiff's Motion for Summary Judgment, a brief statement of the res judicata doctrine is necessary to put the parties in the proper posture. The general rule is that federal courts must give the "same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982)); *see also Silverton v. U.S. Dep't of Treasury*, 644 F.2d 1341, 1346-47 (9th Cir. 1981) (holding that prior habeas proceedings in state court may have a preclusive effect in subsequent section 1983 suits in federal court). Federal courts must apply the res judicata rules of the court that

---

[4]To clarify and simply matters, the court shall use the terms "claim preclusion" and "issue preclusion" when discussing the individual doctrines. All further references to "res judicata" shall only be used to describe both doctrines in a general sense.

6

rendered the underlying judgment. *See Migra*, 465 U.S. at 81-82. Thus, because the prior judgment in this case was rendered in a Nevada state court, Nevada principles will apply.

Defendants argue that claim preclusion should operate to "bar[] relitigation of the claims in this action [such that] Plaintiff's complaint should be dismissed." (Doc. #20; *accord* Doc. #32.) This position misunderstands the possible applications of res judicata, which may be used both offensively and defensively. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.4 (1979) (explaining the difference between offensive and defensive res judicata). In this case, if the state court had denied Plaintiff's petition for writ of habeas corpus, Defendants could have defensively used res judicata to call for the dismissal of Plaintiff's complaint since identical violations have been alleged. *E.g.*, *Hawkins v. Risley*, 984 F.2d 321, 323 (9th Cir. 1993). The state court, however, granted Plaintiff's petition (Doc. #2, Exh. D-49), such that if res judicata were to apply to bar the relitigation of Plaintiff's claims, it would apply against Defendants. Therefore, the only issue before the court on these cross-motions for summary judgment is whether Plaintiff can offensively use the prior state court proceeding against Defendants in this action.

1. The Basic Requirements for Claim & Issue Preclusion

Res judicata is an umbrella term that often refers to the concept that a party cannot relitigate a cause of action or issue that has already been determined by a court. *Executive Mgmt., Ltd. v. Ticor Title Ins. Co.*, 963 P.2d 465, 473 (Nev. 1998). "Claim preclusion," *i.e.*, res judicata, and "issue preclusion," *i.e.*, collateral estoppel, are two subspecies of that rule. *Id.* Under Nevada law, three basic elements are required for both doctrines:

> (1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; and (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation.

*Id.*; *accord Univ. of Nev. v. Tarkanian*, 879 P.2d 1180, 1191 (Nev. 1994); Restatement (Second) Judgments § 123 (1995).

///

7

The two doctrines are not the same, however. Issue preclusion has an additional element, which requires that the issue in question must have been "actually and necessarily litigated" in the previous case. *Executive Mgmt., Ltd.*, 963 P.2d 465, 473. In contrast, claim preclusion "embraces all grounds of recovery that were asserted in a suit, as well as those that could have been asserted." *Tarkanian*, 879 P.2d at 1191.

    2. Issue Preclusion's Additional Element: "Actually Litigated"

The preliminary element of issue preclusion requires that the issue in question must have been "actually and necessarily litigated" in the previous case. *Executive Mgmt., Ltd. v. Ticor Title Ins. Co.*, 963 P.2d 465, 473 (Nev. 1998); *Univ. of Nev. v. Tarkanian*, 879 P.2d 1180, 1191 (Nev. 1994). Defendants take the position that offensive issue preclusion is unavailable to Plaintiff because no issues were actually litigated in the prior state court proceeding. (Doc. #20.) Plaintiff, however, argues that Defendants did actually litigate his habeas petition because they appeared and filed a motion to dismiss. (Doc. #18.)

The court agrees with Defendants. An issue is necessarily and actually litigated if the "court in the prior action addressed and decided the same underlying factual issues." *Kahn v. Morse & Mowbray*, 117 P.3d 227, 235 (Nev. 2005) (citing *LaForge v. State, Univ. & Cmty. Coll. Sys. of Nev.*, 997 P.2d 130, 134 (Nev. 2000 )). Here, the record makes it clear that the state court granted Plaintiff's petition for writ of habeas corpus because it was unopposed and all facts alleged were presumed to be true. (Doc. #2, Exh. D-49.) No factual issues were addressed or decided in the state court's entry of a default judgment, Restatement (Second) Judgments § 27cmt. e (1982) ("In the case of a judgment entered by . . . default, none of the issues is [sic] actually litigated"); *see, e.g., Jackson v. Official Representatives & Employees of Los Angeles Police Dep't*, 487 F.2d 885, 886 (9th Cir. 1973) (concluding that issue preclusion did not apply in a subsequent section 1983 case because the matters asserted were not actually litigated on their merits in the appellant's criminal trial or petition for habeas corpus); *Havas v. Engebregson*, 633 P.2d 682, 683 (Nev. 1981) (concluding that issue preclusion did not apply in a subsequent action after a "careful reading of the transcript" revealed that the issue in

question "was specifically not tried"), or through its review of Defendants' motion to dismiss (*see* Doc. #18, Exh. 58).

Plaintiff's arguments for an alternative broader rule of "actually litigated" are misplaced. (Doc. #18.) Plaintiff relies on cases such as *In re Bush*, 62 F.3d 1319 (11th Cir. 1995) and *In re Gottheiner*, 703 F.2d 1136 (9th Cir. 1983), but these cases are legally and factually distinguishable. First, *Bush* and *Gottheiner* applied federal res judicata principles, not Nevada law. *In re Bush*, 62 F.3d at 1323 n.6 (stating that federal law applied but noting that "[w]here the prior default judgment was rendered in state court, a different analysis may be required"); *see In re Gottheiner*, 703 F.2d at 1138-39. Second, in each those cases the courts specifically found that the defaulting party actively and substantially participated in the prior litigation before they eventually defaulted.

For example, in *Bush*, 62 F.3d at 1321-22, the court noted that the debtor had engaged in discovery for several months and responded to a motion for sanctions. In *Gottheiner*, 703 F.2d at 1140, the court had similarly noted that the debtor actively participated in the case for sixteen months and engaged in discovery. The same findings cannot be made in Plaintiff's case because just the opposite is true. The state court record shows that Defendants defaulted for their complete lack of active participation. (*See* Doc. #18, Exh. 60.) Their idle behavior was apparent from the start, unlike the defaulting parties in *Bush* and *Gottheiner*. (*E.g.*, Doc. #18, Exh. 60.) Thus, because no issues were actually and necessarily litigated in the prior habeas proceeding, issue preclusion is not applicable.

3. Application of the Basic Res Judicata Elements[5]

The first element of res judicata requires that the same claim or issue be involved in the prior and present litigation. Here, the parties concede that Plaintiff has asserted the exact same constitutional claims, which are comprised of the exact same issues, in both proceedings. (Docs. #18, 30, 32.) The court agrees. Whether a party asserts the "same claim" or "same issue" depends on whether identical facts are necessary to support the prior and present proceeding. *LaForge v. State,*

---

[5]Although issue preclusion is inapplicable because no issues were actually or necessarily litigated, the rest of the court's discussion is equally applicable to both claim and issue preclusion because they share remaining three essential elements. *Executive Mgmt., Ltd. v. Ticor Title Ins. Co.*, 963 P.2d 465, 473 (Nev. 1998).

*Univ. & Cmty. Coll. Sys. of Nev.*, 997 P.2d 130, 134 (Nev. 2000) (stating the issue preclusion test); *Kassabian v. Jones*, 317 P.2d 572, 573 (Nev. 1957) (stating claim preclusion test); *accord* Restatement (Second) Judgments § 124 (1995). In his petition for writ of habeas corpus, Plaintiff alleged his disciplinary conviction violated his First and Fourteenth Amendment rights (Doc. #20, Exh. C), and in this case Plaintiff seeks damages for the same alleged constitutional violations (Doc. #2, Exh. C). *E.g.*, *Hawkins v. Risley*, 984 F.2d 321, 325 (9th Cir. 1993); *Gross v. Heikien*, 957 F.2d 531, 532 (8th Cir. 1992); *Silverton v. U.S. Dep't of Treasury*, 644 F.2d 1341, 1347 (9th Cir. 1981). The essential facts, as judged by the pleadings and evidence required, would be the same in both instances. The difference in the form of relief requested by Plaintiff in each instance is immaterial.[6] *Hawkins*, 984 F.2d at 325; *Silverton*, 644 F.2d at 1347; *see, e.g.*, *Kassabian*, 317 P.2d at 573.

The second element of res judicata inquires whether the prior proceeding had come to a final judgment on the merits. *Executive Mgmt., Ltd.*, 963 P.2d at 473; *Sierra Pac. Power Co. v. Craigie*, 738 F. Supp. 1325, 1329 (D. Nev. 1990) (stating that the same rule of finality of judgment applies between claim and issue preclusion under Nevada law). Here, Defendants take the erroneous position that a default judgment is not a final judgment on the merits for the purposes of res judicata. (Doc. #20.) Nevada courts have recognized the applicability of res judicata to default judgments. *Paradise Palms Cmty. Ass'n v. Paradise Homes*, 505 P.2d 596, 598-99 (Nev. 1973); *Kernan v. Kernan*, 369 P.2d 451, 454 (Nev. 1962) (quoting *Gulling v. Washoe County Bank*, 89 P. 25, 28 (Nev. 1907)); *see, e.g.*, *Savage v. Salzmann*, 495 P.2d 367, 368 (Nev. 1972) (discussing how a default judgment with res judicata effect could nevertheless be collaterally attacked on grounds of fraud). The need for a final judgment "on the merits" is a term of art, not a literal requirement. Charles A. Wright, Law of Federal Courts § 100A (6th ed. 2002). Since Defendants failed to appeal the state court's grant of habeas corpus (*see*

---

[6] Defendants' argument that claim that preclusion should apply because Plaintiff's habeas petition challenged all of the disciplinary actions taken against him, not just the loss of good time (Doc. #32), lacks merit. The nature of the habeas action limited Plaintiff to the recovery for the loss of good time (Doc. #18, Exh. 58 (citing *Dotson v. Nevada*, 958 P.2d 81, 82 n.3 (1998))), but that inherent limitation does not have a preclusive effect in a civil suit for damages.

Doc. #18, Exh. 64), that court's judgment was final and on the merits for res judicata purposes, *Paul v. Pool*, 605 P.2d 635, 637 (Nev. 1980).

The third element of res judicata asks whether Defendants were a party or in privity with a party to the prior adjudication. *Paradise Palms Cmty.*, 505 P.2d at 598-99. This issue was not directly addressed by either party. In any event, the court finds that the "same parties" are not involved. The prior proceeding was asserted against Defendants as "custodians," in their official capacities, who had the power to release or relieve Plaintiff from the disciplinary conviction (Doc. #2, Exh. D-49 (naming Defendant McDaniel in his capacity as the ESP warden)). Nev. Rev. Stat. §§ 34.730 (2), 34.735(4) (2006). Now, Defendants are being sued in their personal and individual capacities. (Doc. #2, Exh. C.) This duality in capacity gives rise to separate legal personalities such that Defendants cannot be said to be the "same parties" for res judicata purposes. *See Andrews v. Daw*, 201 F.3d 521, 525 (4th Cir. 2000) (recognizing that a person sued in two different capacities was not the "same person" for res judicata purposes); *Pedrina v. Chun*, 97 F.3d 1296, 1302 (9th Cir. 1996) (same); Restatement (Second) Judgments § 36 (1982). Thus, the court must determine whether privity exists.

Defendants essentially argue there is no privity because their interests in each suit are different in a practical sense. (Doc. #32.) That is, Defendants argue that since they are now exposed to an award for money damages, the court should not apply res judicata against them. (*Id.*) This argument misses the point. In Nevada, "[a] privy is one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase." *Paradise Palms Cmty.*, 505 P.2d at 598 (quoting *Bernhard v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 122 P.2d 892, 894 (Cal. 1942)); *accord Brennan v. EMDE Med. Research, Inc.*, 652 F. Supp. 255, 261 (D. Nev. 1986); *In re Shuman*, 68 B.R. 290, 292 (Bankr. D. Nev. 1986). Here, Plaintiff was required to seek habeas relief before he could initiate a suit for money damages. The prior suit was an important preliminary step that could not be avoided given the facts of Plaintiff's alleged violations and the *Heck* doctrine. Had Plaintiff failed to obtain such relief, the issue of Defendants' personal liability would have been foreclosed under the principles of defensive res judicata. *E.g., Hawkins v. Risley*, 984 F.2d 321, 323 (9th Cir. 1993); *Silverton v. U.S. Dep't of*

11

*Treasury*, 644 F.2d 1341, 1346-47 (9th Cir. 1981); *Harris v. Jacobs*, 621 F.2d 341, 342 (9th Cir. 1980). When Plaintiff succeeded, however, Defendants' personal interests in this matter were solidified. Put otherwise, Defendants, in their individual capacities, acquired an interest in this matter after Plaintiff's disciplinary conviction was found to be illegal.

In any event, even though the basic elements for claim preclusion are present, the court may still refuse to allow the offensive use of res judicata. *Allen v. McCurry*, 449 U.S. 90, 95 (1980); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330 (1979); *see Kahn v. Morse & Mowbray*, 117 P.3d 227, 236 (Nev. 2005); *Bernhard*, 122 P.2d at 894. Previous state court judgments cannot be given a preclusive effects in federal court if they did not give the party to be estopped a "full and fair opportunity" to litigate. *Clements v. Airport Auth. of Washoe County*, 69 F.3d 321, 328 (9th Cir. 1995). Defendants, however, were not hindered from fully litigating the previous suit due to any procedural difficulties or because there were prior court decisions that would make the application of res judicata unfair (*see* Doc. #18). *See Parklane Hosiery Co.*, 439 U.S. at 330-31. Nevertheless, the court finds there are two significant reasons why Defendants did not receive a full and fair opportunity in Plaintiff's habeas litigation.

There was little incentive for Defendants to provide a vigorous defense in the first suit because the relief sought was "*de minimis*." (Doc. #18, Exh. 64). *See id.* at 330. Plaintiff was serving consecutive life sentences, but his petition for habeas relief only involved the restoration of thirty days of good time. (Doc. #18, Exh. 64.) Also, Defendants are appearing in this suit in a different light where different legal theories may apply. *Bernhard*, 122 P.2d at 896. This is not a case, as Plaintiff puts it, where the court would be giving Defendants a "second bite of the apple."[7] (Doc. #32.) Defendants may raise certain defenses, such as qualified immunity, that were unavailable in the habeas proceeding, *see, e.g.*, *Andrews v. Daw*, 201 F.3d at 525-26 (discussing how suits against state officers in their official versus individual capacities differ in legal theory); *Cronn v. Buffington*, 150 F.3d 538,

---

[7] Plaintiff specifically cites *In re Wilson*, 72 B.R. 956, 959 (Bankr. M.D. Fla. 1987), for this proposition. That case is distinguishable, as previously discussed, because Defendants' are not being sued in the same capacities. That was not the case in *Wilson*, where it had already been determined in a prior suit that the debtor defendant owed the plaintiff money. *Id.* at 957-59.

12

541 (5th Cir. 1998) (discussing whether the defendants were entitled to a qualified immunity in a section 1983 action after the plaintiff had obtained habeas relief); *McGrew v. Texas Bd. of Pardons & Paroles*, 47 F.3d 158, 161 (5th Cir. 1995) (refraining from determining whether a qualified immunity applied because the plaintiff had not first complied with the mandate of *Heck*), and which might preclude a finding of liability.

In these respects, this case is similar to *Rawls v. Daughters of Charity of St. Vincent De Paul, Inc.*, 491 F.2d 141 (5th Cir. 1974). There, a woman's commitment to a hospital for mental treatment was found to have violated her due process rights in a prior habeas proceeding. *Id.* at 146. Although the hospital appeared and presented a copy of the commitment order to the court, they did not present any real defense in the woman's petition hearing. *Id.* In a subsequent civil suit for damages, the woman argued the hospital was liable under the principles of res judicata, but the Fifth Circuit held otherwise. *Id.* at 148. The court expressly recognized that the use of offensive use of res judicata was inappropriate where it was apparent that the hospital had "far less incentive to contest the unlawfulness of the plaintiff's detention than at present." *Id.* Furthermore, the court held that while the habeas hearing determined the woman's *commitment* was illegal, it did not establish as a matter of law that the *hospital* falsely imprisoned the plaintiff. *Id.*

Accordingly, the court finds that res judicata principles are inapplicable against Defendants. No issues were actually or necessarily litigated in Plaintiff's habeas suit, and furthermore, Defendants were not afforded a full and fair opportunity to litigate their individual rights in the previous matter. Plaintiff's Motion for Summary Judgment should therefore be denied. (Doc. #18.) Defendants' Cross-Motion for Summary Judgment on claim preclusion grounds should also be denied as a matter of law because it misunderstands the possible applications of res judicata. (Doc. #20.)

///
///
///
///
///

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the District Judge enter an order **DENYING** Plaintiff's Request for Entry of Default (Doc. #26).

**IT IS FURTHER RECOMMENDED** that the District Judge enter an order **DENYING** Plaintiff's Motion for Summary Judgment (Doc. #18).

**IT IS FURTHER RECOMMENDED** that the District Judge enter an order **DENYING** Defendants' Cross-Motion for Summary Judgment (Doc. #21).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED: June 19, 2006.

_____
UNITED STATES MAGISTRATE JUDGE